2010 Ark. App. 134

**Anita A. BREWER, Appellant**

v.

**Timothy H. SMITH, Appellee.**

**No. CA 09–337.**

Court of Appeals of Arkansas.

Feb. 11, 2010.

Richard Ernest Worsham, Worsham Law Firm, P.A., Little Rock, for Appellant.

Elton Allison Rieves, III, Elton A. Rieves, III & Associates, Mountain View, for Appellee.

RITA W. GRUBER, Judge.

Appellant Anita Brewer and appellee Timothy Smith are the parents of a child born out of wedlock on June 28, 2006. An order of paternity was entered on April 4, 2007, as well as an uncontested order providing for child support and visitation. This appeal is from an order entered on December 23, 2008, granting appellee's motion for a change of custody to him. Appellant contends that the trial court erred in determining that there was a material change of circumstances and that it was in the best interest of the child to award custody to appellee. We find no error and affirm.

From the time the order of paternity was entered in this case until the hearing on appellee's motion for change of custody, the parties experienced significant problems with appellee's exercise of visitation with the child. On June 15, 2007, appellee filed a petition for specific visitation, contending that appellant had repeatedly and purposely denied his rights of visitation. On August 15, 2007, the court entered an order setting forth appellee's specific rights to visitation and the rules governing certain of the parties' interactions concerning the child, including, for example, that neither party would have overnight guests of the opposite sex when the child was present.

The parties continued to experience conflict over appellee's visitation, and on October 24, 2007, the trial court heard appellee's motion for contempt, filed in September 2007, and found appellant in contempt for denying visitation. The court questioned whether appellant had "the best interest of the child at heart" and warned that, if appellant denied visitation again, the court "in all likelihood" would order a change of custody. The court withheld sentencing on the contempt.

In March 2008, appellee filed another petition for contempt, alleging that appellant was still denying him visitation. He also requested a change of custody. The court held a hearing on the second contempt petition on April 9, 2008, and again found appellant in contempt. The court sentenced appellant on both the previous contempt and on the second contempt to serve forty-eight hours in the county jail and to pay appellee's attorney's fee of $500.

The trial court heard the petition for change of custody on August 15, 2008. Testimony at trial indicated that appellant had between two and four residences in a trailer park since the child was born in June 2006 and that, in contrast, appellee had owned and lived in a condominium in Germantown, a nice suburb of Memphis, for eighteen years. A Tennessee child services' employee, who responded to allegations filed by appellant, testified that appellee's home was immaculate and that the child had her own room appropriately decorated for a little girl her age.

Appellant admitted that she and her boyfriend had spent the night together several times in the presence of the child in direct violation of the court's previous order. Appellant also testified that she was employed forty hours a week as a security officer at the time of trial, but she admitted that she had held at least seven different jobs during the past five years. Appellant stated that she had two other children in addition to the minor child at issue in this case. Her older daughter, who was seventeen at the time of trial, dropped out of school when she was fourteen and moved in with her grandparents. She had not finished high school and was, at the time of trial, engaged to be married. Appellant's son was nineteen or twenty at the time of trial, also had not completed high school, had moved out of appellant's

home sometime during high school, and had criminal convictions as a minor and an adult. Appellant also stated that she had just started attending church after the petition for change of custody was filed and that she had never really attended church before the past few months.

Finally, Officer Selgyna Brown of the Memphis Police Department testified by deposition that appellant was aggressive and accusatory during the visitation exchanges. She testified that appellant yelled at appellee in front of the child, accused him of child abuse, and reported to her that appellee was drunk, which he was not. Appellant also made numerous child-abuse complaints about appellee to the Memphis Police Department, the Germantown Police Department, the Crittenden County Sheriff's Office, the rape and sexual abuse crisis agencies, and the Tennessee Department of Children's Services, and all of the allegations were unfounded.

Appellee testified that he was self-employed, had flexible work hours, attended church regularly and took the child with him when she visited, and made arrangements with families from his church for assistance with the child when needed. He also testified that he attended two parenting classes: one four-hour class ordered by the court and one thirty-hour class recommended by his church.

On December 4, 2008, the court sent a twelve-page letter to the parties setting forth in great detail its findings and conclusions. The court determined that there had been a material change in circumstances since the last custody order—that is, the date the order of paternity was entered. The court found that, since that time, appellant admitted she had spent the night with her boyfriend in the presence of the child at least twice in direct violation of prior court orders. The court also recognized that appellant had twice been found

guilty of contempt for denying visitation on numerous occasions. Finally, the court noted that appellant had made numerous allegations against appellee of sexual and physical abuse, all of which had proven unfounded. Moreover, appellant had subjected the child to numerous unnecessary physical examinations in an attempt to prove these allegations. The court referred to Officer Brown's deposition testimony in which she stated that appellant continually cursed, screamed, and accused appellee of inappropriate activity in the presence of the child.

The court then found that it was in the child's best interest to live with appellee and, accordingly, changed custody to him. In its letter, the trial court set forth a very detailed analysis of its considerations, including an analysis of appellant's physical-abuse contentions against appellee. In essence, the court determined that appellant's success, or lack thereof, in raising her other two children—neither of whom graduated from high school, both of whom moved out of her home when minors, and both of whom had a criminal arrest or conviction—indicated a lack of parenting skills. The court also noted that appellant had moved around, had an unstable employment history, and had emotional problems with respect to appellee's visitation, demonstrated by her defiant attitude, outbursts during visitation exchanges, and repeated denial of appellee's right to his court-ordered visitation. On the other hand, the court observed that appellee was self-employed with flexible work hours, attended church on a regular basis with the child, owned his own home in which he had lived for eighteen years, and had demonstrated to the court his willingness to abide by the court's orders by attending not one, but two, parenting classes. The court found that appellee had a more stable home life, was more stable financially, would set a better example for the child,

and would put more emphasis on the child's education and the importance of graduating from high school. The court also found that appellant was not credible and that appellee was more believable and more likely to foster visitation with the noncustodial parent in the future.

In the letter's closing paragraph, the court directed appellee's attorney to prepare an order reflecting the court's ruling. On December 28, 2008, the court entered an order awarding custody to appellee, finding that there had been a material change of circumstances and that it was in the child's best interest for appellee to be awarded custody subject to the right of appellant to exercise visitation. This appeal followed.

In reviewing child-custody cases, we consider the evidence de novo, but we will not reverse the trial court's findings unless they are clearly erroneous or clearly against the preponderance of the evidence. *Taylor v. Taylor*, 353 Ark. 69, 110 S.W.3d 731 (2003). A finding is clearly against the preponderance of the evidence when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. *Davis v. Sheriff*, 2009 Ark. App. 347, at 2, 308 S.W.3d 169. We also give special deference to the superior position of the trial court to evaluate and judge the credibility of the witnesses in child-custody cases. *Carver v. May*, 81 Ark.App. 292, 296, 101 S.W.3d 256, 259 (2003). We have often stated that we know of no cases in which the superior position, ability, and opportunity of the trial court to observe the parties carry as great a weight as those involving children. *Id.*

In deciding whether a change of custody is warranted, the trial court must first determine whether there has been a material change in circumstances of the parties

since the most recent order of custody. *Davis,* 2009 Ark. App. 347, at 2, 308 S.W.3d 169. If that threshold requirement is met, the court must then determine who should have custody with the sole consideration being the best interest of the child. *Id.*

■ Appellant challenges both of the court's findings: that there has been a material change of circumstances since the most recent custody order and that it was in the child's best interest to change custody to appellee. With regard to the material change in circumstances, appellant argues that the last order entered in the case was the second order finding appellant guilty of contempt and sentencing her for both contempt petitions. Appellant misunderstands the law. Custody shall not be changed unless there has been a material change of circumstances "since the last order of *custody,*" *Davis,* 2009 Ark. App. 347, at 2, 308 S.W.3d 169 (emphasis added), not since the last order in the case.

■ Turning to the evidence in this case, we cannot say the court's finding of a material change in circumstances is clearly erroneous or clearly against the preponderance of the evidence. Appellant was twice found guilty of contempt for denying visitation to appellee since the most recent order of custody was entered. She also admitted that she spent the night with her boyfriend in the presence of the child on several occasions in direct violation of court orders entered since the last custody order was entered. The court found that appellant's repeated failure to comply with its previous orders for visitation constituted a material change in circumstances. The court also found appellant's repeated, unfounded allegations of physical and sexual abuse and her angry, accusatory, and inappropriate conduct during exchanges of the child for visitation were a material change in circumstances since the initial custody

order. We hold that the court's decision was not clearly against the preponderance of the evidence. *See, e.g., Sharp v. Keeler,* 99 Ark.App. 42, 256 S.W.3d 528 (2007) (holding that the mother's repeated refusal to allow father visitation when she decided visitation was not in the child's best interest, and her refusal to follow the trial court's directives, constituted a record of continued alienation that was a material change of circumstances); *Swadley v. Krugler,* 67 Ark.App. 297, 999 S.W.2d 209 (1999) (holding that the mother's repeated and unfounded accusations against the father of sexual abuse toward parties' child constituted a material change in circumstances).

■ Finally, we hold that the court's finding that it was in the child's best interest to change custody to appellee was not clearly against the preponderance of the evidence. The court's letter set forth in great detail its reasons for concluding that it was in the child's best interest to change custody to appellee. The court found appellee to be a more credible witness, a more stable parent, and a better example for the child. The court determined appellee had a more stable home life and was more financially stable than appellant. The court also found that appellee was more likely to foster visitation and a good relationship with the other parent. Finally, the court did not believe that appellant put the interests of the child before her own personal interests.

For the foregoing reasons, we hold that the trial court's decision changing custody to appellee was not clearly erroneous, and we affirm its decision.

Affirmed.

GLOVER and BROWN, JJ., agree.